IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DE'ANGELO WIGGINS, | ) | Case No. 1:17-cv-1107 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| PTL. DAVID DUPONT, et al., | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | |

## I. Introduction

A Garfield Heights police officer injured Plaintiff De'Angelo Wiggins in the process of arresting him for failing to comply with a request to leave private property. Wiggins claims that the officer, Patrolman David DuPont,[1] used excessive force. Wiggins asserts a *Monell* claim against the City of Garfield Heights for failing to train, supervise or discipline its officers and for adopting a custom or policy of indifference to unconstitutional conduct, which ultimately caused his injury. Because Wiggins has not identified any genuinely disputed issues of material fact and because the City of Garfield Heights is entitled to judgment as a matter of law on plaintiff's claims, the court must GRANT the City's motion for summary judgment.

---

[1] Officer DuPont is consistently referred to in the pleadings and court filings as David "Dupont." However, his police report of the incident indicates he spells his name "DuPont." The court will use the latter, more traditional, spelling herein.

## II. Statement of Facts

### A. Alleged Violation of Wiggins's Constitutional Rights

The undisputed Rule 56 evidence reveals that St. John Lutheran Church in Garfield Heights ran a youth basketball program on Tuesday and Thursday nights in 2016. ECF Doc. 19-1, p. 10. Wiggins went to the church on December 20, 2016 with his friends Jaylon Thomas, Hilton Peck, and Adolph Jackson. ECF Doc. 19-1, p. 15. Because Wiggins decided he didn't want to play basketball, a supervisor asked him to leave. Id. Wiggins, Peck and Thomas asked if they could sit in Jackson's car in the parking lot while he played basketball. Id. Jackson gave them the keys to his car where they sat with the engine off in the church parking lot. ECF Doc. 19-1, p. 15-16.

Karen Dutton, the person in charge of open gym, called the police and complained that Wiggins, Peck and Thomas were not supposed to be on the property because she had asked them to leave. She feared a fight might occur. ECF Doc. 20-1, Page ID# 247. Officer DuPont heard the dispatch call and responded to the scene. While driving to the church, DuPont heard another officer's radio report that Wiggins had previously fought with police and could be "highly disorderly." ECF Doc. 20-1, Page ID# 242.

Upon arrival, Officer DuPont went inside and talked to Ms. Dutton. ECF Doc. 20-1, Page ID# 247. She was adamant that she wanted the young men to leave the property. Id. According to Wiggins, Officer DuPont said approached Jackson's car and tapped on the window with a flashlight. ECF 19-1, p. 21. DuPont asked them to roll down the window but the car was off. ECF Doc. 20-1, Page ID# 246. Wiggins testified that he opened the door; DuPont says he was the one who did so. ECF 19-1, p. 21; ECF Doc. 20-1, Page ID# 247.

Wiggins admitted Officer DuPont told the young men that they needed to leave the property. Wiggins testified that he responded by stating that Ms. Dutton had told them they could sit in the car. ECF 19-1, p. 22. Wiggins admitted Officer DuPont told them they would be arrested if they didn't leave. ECF 19-1, p. 23. Wiggins denied telling DuPont that he wouldn't leave. Id. He claims that he said, "I'm not going anywhere" and then got out of the car. Id. DuPont claims that Wiggins was very angry; and he asserts Wiggins said that he had every right to be there, and was going to go in there (the church), and he wasn't going anywhere. ECF Doc. 20-1, Page ID# 248-249.

Wiggins claims that when he got out of the car he took a step and DuPont immediately took him to the ground. ECF 19-1, p. 25. Wiggins explains that he was facing the car with his back to DuPont, "trying to slip out the door." ECF 19-1, p. 48-49. According to Wiggins, DuPont grabbed his left shoulder from behind with DuPont's left hand and pulled him down. Id. DuPont was holding his flash light in his right hand. ECF Doc. 19-1, p. 51. Wiggins hit the ground on his chest and stomach. His head didn't hit the ground. ECF 19-1, p. 50. DuPont remained in a standing position during the incident. ECF 19-1, p. 52. He pulled Wiggins's arms behind his back and placed him in handcuffs. ECF 19-1, p. 50. Wiggins did not see Officer Tatulinski until he stood up. ECF 19-1, p. 52.

DuPont recalls the incident differently. He claims that the two collided when Wiggins jumped out of the car and that both of them went to the ground. ECF Doc. 20-1, Page ID# 249. There was ice around the car. ECF 19-1, p. 20. After they fell, Officer DuPont was worried about protecting himself from attack. So he struggled with Wiggins to handcuff him. ECF Doc. 20-1, Page ID# 251.

During the incident, Wiggins's head was injured. Wiggins does not state how his head was injured. But he has submitted an unsworn statement from Jaylen Thomas, stating "the officer slammed [De'Angelo] then hit him with the flashlight in the face and kicked him a little bit." ECF Doc. 18-8, Page ID#131. The court cannot consider this statement because defendants have objected to it as an unsworn statement that would not be admissible in evidence. Fed. R. Civ. Proc. 56(c)(2); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) (quoting *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 968-69 (6th Cir. 1991)).

Officer DuPont was not sure how Wiggins was injured, but he denies intentionally hitting him in the head with his flashlight. ECF Doc. 20-1, Page ID# 256. DuPont's report stated that there was "unintended contact" with Wiggins's head and the flashlight. Id. DuPont thinks that the flashlight may have hit Wiggins in the head when he jumped out of the car. ECF Doc. 20-1, Page ID# 257.

After the incident, DuPont asked Wiggins if he wanted EMS to be called. Wiggins told him that he didn't want EMS because he didn't want a ticket. An EMS unit did come to the scene, however. Paramedics looked at Wiggins's head but didn't provide any treatment. ECF 19-1, p. 28. Officer DuPont gave Wiggins a citation for trespassing. ECF 19-1, p. 29. Wiggins then went to the emergency room where he got three stitches. Wiggins took one ibuprofen per day for about a month. ECF 19-1, p. 54. He also went to three doctor appointments to treat migraine headaches until he felt better. ECF 19-1, p. 55.

**B.     Background Information Concerning Police Department and Officer DuPont**

The City trained its officer in accordance with the State of Ohio's continuing professional training mandates. ECF 24, pp. 5-9. Starting in January 2017, officers were required to review portions of the police department's policies on a daily basis. ECF 24, p. 9-11. Officer DuPont

received ongoing training through the police department.  ECF 20-1, Page ID#221-229.  He has taken several training classes on the topic "use of force."  ECF 20-1, Page ID#227-229.

The police department investigates complaints against officers that are filed with the police department.  Each investigation is handled separately and decided on its merits.  ECF 24, p. 19.  Chief Byrne testified that if an officer did something illegal he would handle it, but he would not discipline an officer if there was no evidence backing up the complaints against him.  ECF 24, p. 25.

Complaints have been filed against Officer DuPont during his tenure as a Garfield Heights officer.  In March 1998, an individual complained that Officer DuPont put him on the ground and later shoved him into the police car.  ECF 20-1, Page ID# 230-231.  In May 2007, a complaint claimed that Officer DuPont hit an individual in the head with the butt of his gun.  Officer DuPont's report stated that the individual hit his head on furniture while being taken to the ground.  ECF 20-1, Page ID# 234-236.  In April 2009, an individual complained that Officer DuPont hit her in the head with the butt of his shotgun.  ECF 20-1, Page ID# 237-238.  Officer DuPont reported that she fell into his gun during an American Legion Hall evacuation.  ECF 24, pp. 17-18.  In November 2013, another individual complained that Officer DuPont "put his face into a table."  ECF 20-1, Page ID# 239-240; ECF 24, p. 34.  Officer DuPont stated that the individual was injured by broken glass when DuPont took him to the ground.  ECF 20-1, Page ID# 239.  When asked about these complaints one after the other, Chief Byrne acknowledged a pattern but stated that these incidents represented a small fraction of the calls to which Officer DuPont had responded over the years.  ECF 24, p. 23.

### III.  Standard of Review

Under Fed. R. Civ. P. 56(a), summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.2505, 91 L.Ed.2d 202 (1986).  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56 (e)(2).  As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts."  *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson,* 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson,* 477 U.S. at 255.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact."  *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed. R. Civ. P. 56(c), (e).  However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial.  Fed R. Civ. P. 56(c), (e).

**IV.     Analysis**

**A.     Count Four – *Monell Liability***

Section 1983 creates a federal cause of action against state or local officials who, while acting under the color of state law, deprive a person of a federal right.  42 U.S.C. § 1983.  To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom.  *Monell v. Dep't of Social Servs*., 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Id*.  Section 1983 liability does not attach to a municipality based on the actions of its employee tortfeasors under the doctrine of *respondeat superior*; instead, such liability may only be imposed on the basis of the municipality's own custom or policy.  *Monell*, 436 U.S. at 691.  "Under § 1983, local governments are responsible only for their own illegal acts" and may not be held vicariously liable for the actions of their employees.  *D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)).

There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom.  The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.  *Id*.; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne County,* 103 F.3d 495, 507 (6th Cir. 1996).  Wiggins contends that the city had a custom and practice of accepting the officer's story regarding

complaints of excessive force and giving no weight to the complaints of wronged citizens. Wiggins also asserts that the city failed to train, supervise or discipline Officer DuPont for his conduct against Wiggins.

### 1. Customs and Practices

Municipal liability attaches only where the policy or practice in question is "attributable to the municipality," *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012), but Wiggins has not shown that the practice at issue here was acquiesced to or informed by municipal actors. "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives."); *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1120 (6th Cir. 1994) (municipality is liable under § 1983 only for "a pervasive custom or practice, of which the city lawmakers know or should know"). Wiggins concedes that the City may have had a written policy in place regarding the use of excessive force. However, he argues that the actual practice or custom of the City was to allow the use of excessive force and to accept the officer's explanation of the events. ECF Doc. 21, Page ID# 295.

If Wiggins's claim is construed to be asserting a municipal custom of "inaction" in the face of officers' habitually unconstitutional conduct, he would be required to prove (1) "a clear and persistent" pattern of unconstitutional conduct by municipal employees; (2) the municipality's "notice or constructive notice" of the unconstitutional conduct; (3) the municipality's "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) that the policy of inaction was the "moving force" of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than

simply by the conduct of the municipal employee. *Doe v. Claiborne Cnty.,* 103 F.3d 495, 508 (6th Cir. 1996) (citation omitted).

Wiggins has not produced evidence sufficient to create a genuine issue of material fact on the elements of his 'customs and practices' *Monell* claim. Indeed, Wiggins has failed to even show that *his* constitutional rights were violated. Wiggins was not cooperative when Officer DuPont approached him and told him he needed to leave the church property. ECF 19-1, pp. 22-23. Wiggins told Officer DuPont that he "wasn't going anywhere," and then admittedly tried to slip away from Officer DuPont. ECF 19-1, pp. 23-24, 49. Even fully crediting Wiggins's version of the incident, it is unclear how Officer DuPont could have known Wiggins's intentions in that moment. Officer DuPont had heard that Wiggins fought with police in the past and had a reputation for being "highly disorderly," and then Wiggins jumped out of the car quickly saying he "wasn't going anywhere." ECF 19-1, pp. 23-24, 49; ECF 20-1, Page ID#242. Even if Officer DuPont intentionally took Wiggins to the ground and handcuffed him, his conduct was objectively reasonable given the circumstances known to Officer DuPont at the time. Because there was no constitutional violation, Wiggins cannot prevail on his *Monell* claim. "There can be no [municipal] liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cty.*, 205 F.3d 867, 879 (6th Cir. 2000)); *see also Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004).

Wiggins has also not produced evidence sufficient to satisfy the elements of an 'inaction' *Monell* claim. For example, Wiggins has not identified evidence showing "a clear and persistent" pattern of unconstitutional conduct by municipal employees. Wiggins's attorney questioned Chief Robert Byrne and Officer DuPont about four prior excessive force complaints lodged against DuPont. ECF Doc. 20-1, Page ID# 231, 234, 238, 239. The four incidents

occurred over a twenty year period; and the police department investigated each of them when filed. ECF Doc. 20-1, Page ID# 233. In each of the investigated reports, it was determined that DuPont had not used excessive force. ECF Doc. 24, pp. 16-21. As noted above, the police chief did not regard four incidents from among thousands of calls over twenty years to reflect a pattern on DuPont's part of using excessive force. But even if the City had concluded otherwise, Wiggins cannot show a clear and persistent pattern of unconstitutional conduct by the police department by citing the "repeated" failures of a single police officer. *See D'Ambrosio,* 747 F.3d at 388. Wiggins has produced no evidence of a "clear and persistent" pattern of unconstitutional conduct by municipal employees.

Wiggins has also not produced any evidence showing that the city had notice or constructive notice of habitually unconstitutional conduct. In the context of a failure-to-train claim, the Supreme Court has held that a municipality cannot have acted with the required "deliberate ignorance" to the need for a policy change absent its awareness of a prior "pattern of similar constitutional violations." *Connick v. Thompson,* 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) 1360. In *Connick* the Court ruled that four *Brady* violations in a decade were not enough to put a prosecutor's office on notice that action was necessary in order to prevent the *Brady* violations at issue. *Id.* Similarly, Wiggins has pointed to four prior excessive force complaints against Officer DuPont over two decades. But that is insufficient to show that the City had notice or constructive notice of habitual unconstitutional conduct, particularly when the City had determined in each case that the force used was not excessive.

Wiggins has offered no evidence that the City had a custom and practice of accepting the officer's story regarding complaints of excessive force and giving no weight to the complaints of wronged citizens. Wiggins has only cited the four complaints discussed above. He has not

shown a consistent pattern of unconstitutional conduct. Further, he cannot demonstrate the violation of his own constitutional rights. He has not produced evidence to show that the City had constructive notice of ongoing unconstitutional conduct. The City is entitled to summary judgment on Wiggins's 'customs and practices' *Monell* claim.

### 2.    Failure to Train, Supervise or Discipline

Wiggins also asserts a *Monell* claim based on the City's alleged failure to train, supervise or discipline. ECF Doc. 21 Page ID# 296-298. A city's failure to train, supervise or discipline its employees adequately may be considered a custom or policy when such failure amounts to deliberate indifference to the rights of the city's inhabitants:

> It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989). However, a plaintiff asserting municipal liability based upon an alleged failure to train, supervise or discipline must demonstrate both culpability on the part of the municipality, and a causal link between the municipal action and the claimed deprivation of rights. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997).

Here, Wiggins cannot show that Officer DuPont violated his constitutional rights. But even if, for the sake of analysis, it is assumed he could make this showing, he would still be required to show three things in order to hold the City of Garfield Heights liable for Officer DuPont's conduct. First, he must prove that the training given to the City's police officers was, in fact, inadequate. Second, he must establish culpability by proving that it was the City's

conscious decision, when faced with an obvious need, to not provide adequate training. Finally, to establish causation, he must prove that the City's failure to provide adequate training was the "moving force" behind the constitutional violation. *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 904 (6th Cir. 1998) (citing *Monell*, 436 U.S. at 694, 98 S. Ct. at 2038).

Wiggins has cited only four unrelated complaints lodged against Officer DuPont. He argues, based on these incidents, that DuPont has had "numerous citizen complaints" against him and that there have been lawsuits filed against him for use of excessive force. ECF Doc. 21, Page ID# 297. But the four complaints cited by Wiggins occurred over two decades and were only a small fraction of the calls to which Officer DuPont responded. Wiggins has identified only one prior lawsuit against DuPont. Based only on these complaints against Officer DuPont, Wiggins argues that the City "shows deliberate indifference in that it disregards the harm inflicted by its officers and gives the officers a pass via some 'plausible' explanation for the injury sustained by the citizen." Id. Thus, Wiggins bases his entire failure to train and supervise claim on four complaints against a single police officer. There is no evidence that these four complaints put the City on notice of inadequate training. Chief Byrne testified that the police department investigated each of the complaints against DuPont and determined that he had not used excessive force. ECF Doc. 24, pp. 16-21. The fact that these complaints were not put in DuPont's personnel file does not show deliberate indifference by the City. "[D]eliberate indifference is a stringent standard of fault, requiring proof that municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty. V. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Wiggins has produced no evidence to prove that the City was deliberately indifferent in response to excessive force complaints and/or that the City's indifference was a "moving force" behind the constitutional violation he suffered. Indeed,

Wiggins cannot even show his constitutional rights were violated.  The City is entitled to summary judgment on Wiggins's 'failure to train, supervise of discipline' *Monell* claim.

### B.      Counts Two and Five

In Count Two, Wiggins asserts a state law assault and battery claim against Officer DuPont.  ECF Doc. 1, ID# 5.  In Count Five, Wiggins asserts a state law claim for intentional infliction of emotional distress ("IIED").  The City argues that it is entitled to statutory immunity on these claims under Ohio Rev. Code Ann. § 2744.02.  Wiggins, citing Ohio Rev. Code Ann. § 2744.03(A)(6), counters that police officers are not entitled to immunity for acts or omissions done with malicious purpose, bad faith, or in a wanton or reckless manner.  However, § 2744.03(A)(6) is inapplicable to the City.  In *Fabrey v. McDonald Village Police Dep't.,* 70 Ohio St.3d 351, 356 (1994), the Ohio Supreme Court held that Ohio Rev. Code Ann. § 2744.03(A)(6), by its very terms, applies only to individual employees, not political subdivisions.  But even if the City were not entitled to immunity under § 2744.02, Wiggins cannot show that the officers acted with malicious purpose, bad faith, or in a wanton or reckless manner.  In a separate order, the court has determined that Officers DuPont and Tatulinski are entitled to statutory immunity on Wiggins's assault and battery claim.  The court has also determined that Wiggins has not produced evidence supporting the necessary elements of his IIED claim.  Because Wiggins cannot identify evidence to support his tort claims against the officers, his claims against the City for the officers' conduct also necessarily fail.  The City is entitled to summary judgment on these claims.

### C.      Count Three – Willful, Wanton, Reckless Malicious

The City argues that Wiggins has failed to state a claim against it in Count Three.  It argues that there is no cause of action for willful, wanton, reckless and malicious behavior.

Wiggins has offered nothing to rebut this. His brief in opposition defends the assault and battery claim in Count Two and the intentional infliction of emotional distress claim in Count Five. But he does not argue that he has successfully stated a separate claim in Count Three. This "claim" is simply a listing of elements of his Count Two assault and battery claim. *See Bradley v. City of Cleveland,* No. 1:11CV781, 2012 U.S. Dist. LEXIS 30714, 2012 WL 775106, at *3 (N.D. Ohio Mar. 7, 2012). Reckless, wanton, or willful conduct, is evidence of intent which may overcome defenses like statutory immunity under some circumstances. *Bradley,* 2012 U.S. Dist. LEXIS 30714, 2012 WL 775106, at *3. Defendant's unopposed argument is well taken. The motion for summary judgment on Count Three must be granted.

## V.      Conclusion

There are no genuinely disputed issues of material fact on Wiggins's claims against the City of Garfield Heights. He has not produced evidence sufficient to show that the City had a custom and policy of ignoring citizen's complaints or that the alleged custom and practice caused his injuries. The City cannot be held responsible for the alleged conduct of its employees in this case. Moreover, Wiggins has failed to show that his constitutional rights were violated. Garfield Heights' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: May 24, 2018

Thomas M. Parker
United States Magistrate Judge