IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DE'ANGELO WIGGINS, | ) | Case No. 1:17-cv-1107 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| PTL. DAVID DUPONT, et al., | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | |

**I.     Introduction**

Garfield Heights police officers injured Plaintiff De'Angelo Wiggins when they arrested him after her failed to comply with a request to leave private property. He claims the officers, Patrolman David DuPont[1] and Patrolman Timothy Tatulinski, used excessive force. After considering the Rule 56 evidence in a light most favorable to Wiggins, the court finds that DuPont and Tatulinski did not use excessive force and are entitled to qualified immunity. Plaintiff's other claims also lack legal and/or factual support. The motion for summary judgment of Officers DuPont and Tatulinski will, therefore, be GRANTED.

**II.    Statement of Facts**

The undisputed Rule 56 evidence reveals that St. John Lutheran Church in Garfield Heights ran a youth basketball program on Tuesday and Thursday nights in 2016. ECF Doc. 19-

---

[1] Officer DuPont is consistently referred to in the pleadings and court filings as David "Dupont." However, his police report of the incident indicates he spells his name "DuPont." The court will use the latter, more traditional, spelling herein.

1, p. 10.  Wiggins went to the church on December 20, 2016 with his friends Jaylon Thomas, Hilton Peck, and Adolph Jackson.  ECF Doc. 19-1, p. 15.  Because Wiggins decided he didn't want to play basketball, a supervisor asked him to leave.  Id.  Wiggins, Peck and Thomas asked if they could sit in Jackson's car in the parking lot while he played basketball.  Id.  Jackson gave them the keys to his car where they sat with the engine off in the church parking lot.  ECF Doc. 19-1, p. 15-16.

Karen Dutton, the person in charge of open gym, called the police and complained that Wiggins, Peck and Thomas were not supposed to be on the property because she had asked them to leave.  She feared a fight might occur.  ECF Doc. 20-1, Page ID# 247.  Officer DuPont heard the dispatch call and responded to the scene.  While driving to the church, DuPont heard another officer's radio report that Wiggins had previously fought with police and could be "highly disorderly."  ECF Doc. 20-1, Page ID# 242.

Upon arrival, Officer DuPont went inside and talked to Ms. Dutton.  ECF Doc. 20-1, Page ID# 247.  She was adamant that she wanted the young men to leave the property.  Id.  According to Wiggins, Officer DuPont approached Jackson's car and tapped on the window with a flashlight.  ECF 19-1, p. 21.  DuPont asked them to roll down the window but the car was off.  ECF Doc. 20-1, Page ID# 246.  Wiggins testified that he opened the door; DuPont says he was the one who did so.  ECF 19-1, p. 21; ECF Doc. 20-1, Page ID# 247.

Wiggins admitted Officer DuPont told the young men that they needed to leave the property.  Wiggins testified that he responded by stating that Ms. Dutton had told them they could sit in the car.  ECF 19-1, p. 22.  Wiggins admitted Officer DuPont told them they would be arrested if they didn't leave.  ECF 19-1, p. 23.  Wiggins denied telling DuPont that he wouldn't leave.  Id.  He claims that he said, "I'm not going anywhere" and then got out of the car.  Id.

2

DuPont claims that Wiggins was very angry; and he asserts Wiggins said that he had every right to be there, and was going to go in there (the church), and he wasn't going anywhere. ECF Doc. 20-1, Page ID# 248-249.

Wiggins claims that when he got out of the car he took a step and DuPont immediately took him to the ground. ECF 19-1, p. 25. Wiggins explains that he was facing the car with his back to DuPont, "trying to slip out the door." ECF 19-1, p. 48-49. According to Wiggins, DuPont grabbed his left shoulder from behind with DuPont's left hand and pulled him down. Id. DuPont was holding his flash light in his right hand. ECF Doc. 19-1, p. 51. Wiggins hit the ground on his chest and stomach. His head didn't hit the ground. ECF 19-1, p. 50. DuPont remained in a standing position during the incident. ECF 19-1, p. 52. He pulled Wiggins's arms behind his back and placed him in handcuffs. ECF 19-1, p. 50. Wiggins did not see Officer Tatulinski until he stood up. ECF 19-1, p. 52.

DuPont recalls the incident differently. He claims that the two collided when Wiggins jumped out of the car and that both of them went to the ground. ECF Doc. 20-1, Page ID# 249. There was ice around the car. ECF 19-1, p. 20. After they fell, Officer DuPont was worried about protecting himself from attack. So he struggled with Wiggins to handcuff him. ECF Doc. 20-1, Page ID# 251.

During the incident, Wiggins's head was injured. Wiggins does not state how his head was injured. But he has submitted an unsworn statement from Jaylen Thomas, stating "the officer slammed [De'Angelo] then hit him with the flashlight in the face and kicked him a little bit." ECF Doc. 18-8, Page ID#131. However, for reasons further explained below, the court is not permitted to consider this unsworn statement in evaluating the current motion.

Officer DuPont was not sure how Wiggins was injured, but he denies intentionally hitting him in the head with his flashlight. ECF Doc. 20-1, Page ID# 256. DuPont's report stated that there was "unintended contact" with Wiggins's head and the flashlight. Id. DuPont thinks that the flashlight may have hit Wiggins in the head when he jumped out of the car. ECF Doc. 20-1, Page ID# 257.

After the incident, DuPont asked Wiggins if he wanted EMS to be called. Wiggins told him that he didn't want EMS because he didn't want a ticket. An EMS unit did come to the scene, however. Paramedics looked at Wiggins's head but didn't provide any treatment. ECF 19-1, p. 28. Officer DuPont gave Wiggins a citation for trespassing. ECF 19-1, p. 29. Wiggins then went to the emergency room where he got three stitches. Wiggins took one ibuprofen per day for about a month. ECF 19-1, p. 54. He also went to three doctor appointments to treat migraine headaches until he felt better. ECF 19-1, p. 55.

### III. Standard of Review

Under Fed. R. Civ. P. 56(a), summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.2505, 91 L.Ed.2d 202 (1986). As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56 (e)(2). As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

## IV. Law and Analysis

### A. Count One – Excessive Force § 1983

Wiggins asserts an excessive force § 1983 claim in Count One of his complaint. Officer Tatulinski argues that Wiggins has not asserted a claim against him in Count One. He also argues that, even if Wiggins intended to assert a claim against him in Count One, it would fail because he did not use excessive force or even touch Wiggins. Officer DuPont argues that his actions were objectively reasonable and that he is entitled to a qualified immunity for the force he used on Wiggins.

Wiggins's excessive force claim implicates the constitutional protections of the Fourth Amendment and Fourteenth Amendments because he was a free citizen at the time of the incident. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Under the Fourth Amendment,

the court applies an objective reasonableness test, examining the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to defendants' underlying intents or motivations. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004); *see also Graham v. Connor*, 490 U.S. 386, 396-397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The court balances "the nature and quality of the intrusion on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher*, 434 F.3d 461, 466-67 (6th Cir. 2006). A police "officer making an investigative stop or arrest has 'the right to use some degree of physical coercion or threat thereof to effect it.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (quoting *Graham,* 490 U.S. at 396)). But that does not carry with it a license to inflict "gratuitous violence." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009). Force that is unreasonable or excessive violates the Fourth Amendment's prohibition on unreasonable seizures. *See Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848, 851 (6th Cir. 2016).

Nevertheless, the doctrine of qualified immunity shields government officials from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 900 (6th Cir. 2004) (internal quotations omitted). Thus, in assessing claims against police officers alleged to have used excessive force, the court must make a two-step inquiry to determine: (1) whether the police used constitutionally excessive force; and (2) whether the officer is entitled to qualified immunity. *See Saucier v. Katz* , 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). The court may address either question first, in "light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

The first inquiry – whether the force used was constitutionally excessive – requires the court to decide whether, "under the totality of the circumstances, the officer's actions were objectively reasonable." *Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007) (emphasis added). This is an issue of law the court must decide, and it requires consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [t]he [suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see Scott*, 550 U.S. at 381 & n.8 ("At the summary judgment stage . . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record . . . the reasonableness of [the officer's] actions . . . is a pure question of law."). This court must consider each factor "from the perspective of a reasonable officer on the scene," and may not engage in second-guessing through hindsight. *Graham*, 490 U.S. at 396.

The second inquiry – whether qualified immunity shields an officer from suit – depends on whether, at the time of the incident, "the [allegedly violated] right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. This does not necessarily "require a case directly on point," but "existing precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (quoting *Mullenix v. Luna*, ___ U.S.___, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)). Thus, before a court may deny the application of qualified immunity in excessive force claims, it must first "identify a case [in which] an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id*. at 552. Officers cannot be held liable "for mere negligence" in determining the appropriate amount of force to use in a given situation, because "the law does not lightly subject officers to liability

7

after the fact for doing a dangerous job that often requires split-second judgments in complicated, quickly evolving criminal investigations." *Ortiz*, 811 F.3d at 851. Qualified immunity therefore "protects all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S. Ct. at 551 (quotations omitted); see also *Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir. 2015) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.") (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

Wiggins has arguably raised his excessive force claim against both Officer DuPont and Officer Tatulinski. Each officer's liability must be individually assessed in light of his own actions. *See Pollard v. City of Columbus, 780 F.3d 395, 402* (6th Cir. 2015).

### 1. Officer DuPont

#### a) Did Officer DuPont Use Objectively Reasonable Force?

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The court must examine the facts and circumstances of each particular case, considering: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the officers or others; and 3) whether he was actively resisting arrest or attempting to evade arrest by flight. *Graham,* 490 U.S. at 396.

Here, Karen Dutton called police to remove several individuals from church property. She told the police that she feared that "something was going to happen that night." ECF Doc. 20-1, Page ID# 247. The trespassing crime at issue was not severe. Thus, the first factor weighs against the reasonableness of Officer DuPont's conduct.

On the way to the church, Officer DuPont heard on the police radio that Wiggins had a reputation of being "highly disorderly." ECF Doc. 20-1, Page ID# 242. According to Wiggins, when the police arrived at the church parking lot, Officer DuPont tapped on the window of the

8

car and told him that Ms. Dutton wanted him to leave the property. ECF 19-1, p. 22. Wiggins did not immediately comply by leaving the property or by otherwise indicating that he would leave the property. Wiggins told Officer DuPont that Ms. Dutton had told them that they could sit in the car. Id. Wiggins admits Officer DuPont said that if they didn't leave the property, they would be going to jail. ECF 19-1, p. 23. But Wiggins said he wasn't going anywhere – impliedly meaning to jail – and got out of the car. ECF 19-1, p. 23-24. Wiggins's back was toward Officer DuPont as he tried to slip out the door and not hit Officer DuPont or the car door. ECF 19-1, p. 49. At that point, Officer DuPont reasonably may have believed that Wiggins posed a threat to his safety. Wiggins had refused to leave the property and quickly existed the car. Officer DuPont had heard that Wiggins had been disorderly in the past. On the other hand, Wiggins was not involved in a violent crime and had not displayed any weapons. Still, the second *Graham* factor weighs in favor of the reasonableness of Officer DuPont's actions.

After getting out of the car, Wiggins was immediately taken to the ground. ECF 19-1, p. 25. Although his back was toward Officer DuPont, he felt Officer DuPont's left hand grab his left shoulder. ECF 19-1, p. 49. Wiggins testified that Officer DuPont had his flash light in his right hand. ECF 19-1, p. 51. He took Wiggins down with his left hand. After Wiggins was on the ground, Officer DuPont pulled Wiggins's arms around to his back and handcuffed him. ECF 19-1, p. 50-51. At some point, the flashlight in Officer DuPont's right hand hit Wiggins in the head. Wiggins has no personal knowledge of how this happened. Officer DuPont was not sure whether his flashlight caused Wiggins's head injury, but he thought that the flashlight may have hit Wiggins's head when he quickly jumped out of the car. ECF 19-1, p. 42-43.

The third *Graham* factor weighs in favor of the reasonableness of Officer DuPont's conduct. Wiggins did not indicate that he was planning to leave the property. He tried to slip

9

past Officer DuPont, but Officer DuPont had no way of knowing what Wiggins was doing. Even if Officer DuPont intentionally took Wiggins to the ground and handcuffed him, the amount of force that DuPont used was objectively reasonable given the circumstances as described by Wiggins.

Wiggins submitted a statement form from Jaylen Thomas stating that DuPont "started banging on the window violently so Deangelo got out. ECF Doc. 18-8 at Ex. 15, Page ID# 131. Then the officer slammed him then hit him with a flashlight in the face and kicked him a little bit." DuPont correctly argues that the court is not permitted to consider this unsworn statement. Rule 56(c)(2) provides that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." DuPont argues that Thomas's statement is unsworn and appears to be inconsistent with the evidence submitted by the parties. For example, Wiggins does not even claim that Officer DuPont kicked him after he was on the ground, even though this fact would certainly advance his excessive force claim. A court "may not consider unsworn statements when ruling on a motion for summary judgment." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)). Thomas's unsworn statement may not be considered on summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S. Ct. 1598, 26 L. Ed. 2d 142, (1970) ("This statement being unsworn, does not meet the requirements of Fed. Rule Civ. Proc. 56(e)."); *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (observing that "prisoners' unsworn statements do not satisfy the requirements of Fed. R. Civ. P. 56(e) that summary judgment materials be made upon personal knowledge, [and] shall set forth such facts as would be admissible in evidence.") (Citations omitted).

When the Rule 56 evidence is considered in a light most favorable to Wiggins, the court cannot say that Officer DuPont's actions were objectively unreasonable. The question of reasonableness in an excessive force case is objective, asking "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Graham,* 490 U.S. at 397. "With respect to a claim of excessive force, [the] standard of reasonableness at the moment applies; "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." The calculus of reasonableness must embody [an] allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

Officer DuPont was called to the scene because the property manager wanted Wiggins to leave. DuPont told Wiggins that he needed to leave. Wiggins neither complied with this request or indicated that he was planning to do so. Instead, he argued with DuPont about whether he actually needed to leave. And e jumped out of the car and said "I'm not going anywhere." Officer DuPont didn't know what Wiggins was planning to do in that moment. It was reasonable for Officer DuPont to detain Wiggins under these circumstances. And there is no evidence that DuPont intentionally hit Wiggins in the face with his flashlight. There is no evidence that DuPont used gratuitous force or continued to use force after he'd handcuffed Wiggins. Wiggins was placed in DuPont's vehicle and asked whether he wanted EMS to be called.. ECF 19-1, p. 27. Wiggins was later charged with trespassing and entered a no contest plea. ECF 19-1, p. 34. In short, there was nothing objectively unreasonable about Officer DuPont's use of force.

### b) Qualified Immunity

Even if Officer DuPont's use of force was not objectively reasonable, he nevertheless enjoys a qualified immunity for his actions toward Wiggins because the law governing these circumstances is unclear.

> [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Brousseau v. Haugen,* 543 U.S. 194, 198-199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (internal quotations omitted); *see also Livermore ex rel. Rohm v. Lubelan,* 476 F.3d 397, 403-404 (6th Cir. 2007) ("[I]n the excessive force context, it is not enough that a plaintiff establishes that the defendant's use of force was excessive under the Fourth Amendment. To defend qualified immunity, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously proscribed.") The plaintiff bears the ultimate burden of demonstrating that the defendant is not entitled to qualified immunity. *Baker v. City of Hamilton,* 471 F.3d 601, 605 (6th Cir. 2006).

As noted above, whether qualified immunity shields an officer from suit, depends on whether, at the time of the incident, "the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201. This does not necessarily "require a case directly on point," but "existing precedent must have placed the … constitutional question beyond debate." *White v. Pauly,* ___U.S.___, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (quoting *Mullenix v. Luna,* ___U.S.___, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)). Thus, before a court may deny qualified immunity on excessive force claims, it

must first "identify a case [in which] an officer acting under similar circumstances… was held to have violated the Fourth Amendment." *Id. at 552*.

Wiggins cites several cases which he likens to the force used by Officer DuPont. ECF Doc. 18, Page ID# 109. First off, he describes the facts of these cases as follows: "the plaintiff was not the intended target or suspect of the original police investigation and the court held the plaintiff was still unreasonably seized under the Fourth Amendment when the police exerted force upon the plaintiff that restrained his/her freedom of movement." Wiggins's factual description alone invites debate as to whether these cases are relevant. Here, Wiggins was not an unintended target or suspect. Officer DuPont was specifically called to the scene to remove Wiggins and his friends from the property.

The first case cited by Wiggins is *Melgar v. Greene,* 593 F.3d 348 (4th Cir. 2010), involving a missing juvenile boy who was the subject of a search, not for a criminal action but for his safety, and was seized under the Fourth Amendment when a police dog bit him in two places on his leg and drug him on the ground for several feet. The Fourth Circuit found that the boy had been seized but that the officer enjoyed a qualified immunity for his actions. This case actually supports a finding of qualified immunity for Officer DuPont; it does not support Wiggins's position.

Second, Wiggins cites *Wilson v. Wilkins,* 362 Fed. App'x 440 (6th Cir. 2010). In *Wilson*, the Sixth Circuit held that an officer's actions were not objectively reasonable when he took an unnecessarily long route to drive a victim to the police station; rubbed and caressed her hand; looked at her seductively; and told her that she was beautiful and that he wanted to date her. *Id.* at 441. The court found that a reasonable officer would have known that he was not free to make sexual overtures and repeatedly touch a citizen in his control in a moving vehicle. *Id.* at 446.

13

This case is factually distinguishable and most definitely did not put Officer DuPont on notice that his conduct toward Wiggins was unreasonable.

In *Jefferson v. Lewis,* 594 F.3d 454 (6th Cir. 2010), an officer responded to a report of "shots fired." He heard gunshots and commanded three men to move against a wall. He then saw the victim open the side door of a house and saw her hand with something metallic in it extended in his direction and a flash of light. He immediately shot the victim who stated that she did not step outside of the house; did not extend her arm toward the officer; and did not have any "shiny object" that might have given the appearance of a muzzle flash. The officer admitted that he had not heard a gunshot before he shot the victim. The Sixth Circuit remanded the case because it determined that there was a question of fact as to whether the officer was entitled to qualified immunity on summary judgment. *Id.* at 462-463. Because *Jefferson*, too, is factually distinguishable, it did not place the constitutional question raised by Wiggins beyond debate.

In *Nance v. Sammis,* 586 F.3d 604 (8th Cir. 2009), an officer fatally shot a young man with a toy gun. The Eighth Circuit affirmed the district court's denial of summary judgment to the officers. The court held that prior case law made it sufficiently clear to a reasonable officer that a suspect could not be apprehended by use of deadly force when that individual posed no threat of serious physical harm. *Id.* at 611. *Nance* has little application here because Wiggins was neither apprehended by deadly force nor displayed a toy gun.

Finally, in *Howard v. Kansas City Police Dep't,* 570 F.3d 984 (8th Cir. 2009), officers seized a gun-shot victim after he sought their help. The victim had taken off his shirt and wrapped it around his arm to stem the flow of blood from his wound. When officers saw the victim, they drew their weapons and pushed him down onto the hot asphalt street. The temperatures had exceeded 100 degrees Fahrenheit that day and the victim remained shirtless.

14

He complained that the asphalt was burning his skin but officers ignored his complaints. As a result, he sustained second degree burns. Under these facts, the court affirmed the district court's denial of summary judgment because the officers' conduct was not objectively reasonable and the constitutional violation was clearly established. *Id.* at 990, 992. Again, *Howard* is not similar to the facts in this case. *Howard* involved a victim seeking help from police officers. They had no reason to use force against him and their conduct caused serious injury. *Howard* did not put Officer DuPont on notice that the force used on Wiggins violated a clearly established right.

Conversely, the Sixth Circuit recently ruled that it was not sufficiently clear that a reasonable officer would have understood that the level of force exerted by Officer DuPont violated Wiggins's constitutional rights. In *Stanfield v. City of Lima,* No. 17-3305, 2018 U.S. App. LEXIS 6395 (6th Cir. Mar. 15, 2018), Mr. Stanfield was tripped and taken to the ground by one officer, kneed repeatedly in the ribs by another officer, and struck twice in the legs with a long flashlight by a third officer. Similar to the present case, the officers used force while they were attempting to handcuff a suspect. Once he was handcuffed, they did not use any more force. The district court held that the officers were entitled to qualified immunity, and the Sixth Circuit affirmed the grant of summary judgment on that basis. *Id.* at *19-22.

Wiggins has not cited any case that "clearly establishes" that it is a violation of constitutional rights for an officer to take a suspect to the ground and handcuff him when he has refused to cooperate with an owner's request to leave private property. Because there is a lack of clear authority putting the constitutionality of DuPont's conduct "beyond debate," DuPont is entitled to qualified immunity. See *White,* 137 S. Ct. at 552; *Rudlaff,* 791 F.3d at 644. Summary judgment will be granted in favor of Officer DuPont on Count One of Wiggins's complaint.

## 2. Officer Tatulinski

Officer Tatulinski is not mentioned in Count One of Wiggins's complaint. Arguably, Wiggins did not assert this claim against Tatulinski. However, Tatulinski has argued against Count One in the event that Wiggins intended to assert it against him. Tatulinski argues that he did not use *any* force on Wiggins and cannot be held liable on a "failure to intervene" basis. As a general matter, Tatulinski's mere presence during the incident, without a showing of some direct responsibility, cannot subject him to liability. *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013), citing *Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir. 2010). Because there is no evidence Tatulinski actively participated in the takedown, there must be a showing that he either supervised DuPont or owed Wiggins a duty of protection. See *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). To maintain his claim that Officer Tatulinski owed him a duty of care, Wiggins must show that Tatulinski "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring." *Id*.

Wiggins has not responded to Officer Tatulinski's arguments but he also has not expressly disavowed an excessive force claim against him. Under the undisputed evidence before the court, Officer Tatulinski is entitled to summary judgment on Wiggins's excessive force claim as a matter of law. Wiggins has not shown that Tatulinski observed or had reason to know that excessive force would be or was being used. Wiggins never even saw Officer Tatulinski until after he was handcuffed and was returned to his feet. ECF Doc. 19-1, Page 52. Moreover, the force used by Officer DuPont was not excessive and there has been no showing that Tatulinski supervised DuPont or owed Wiggins a duty of protection. Officer Tatulinski is entitled to summary judgment on Count One of Wiggins's complaint.

### B. Count Two – Assault and Battery

In Count Two, Wiggins has asserted a state law assault and battery claim against Officer DuPont. ECF Doc. 1, ID# 5. DuPont contends that Ohio Rev. Code Ann. § 2744.03(A)(6) provides immunity for employees of political subdivisions, such as police officers. The court agrees. O.R.C. § 2744.03(A)(6) provides immunity unless "(a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) liability is expressly imposed upon the employee by a section of the Revised Code."

Wiggins has not shown that any of these exceptions to statutory immunity applies in this case. Wiggins argues that DuPont is not entitled to immunity because he acted with malicious purpose, in bad faith, or in wanton or reckless manner. He cites *Martin v. City of Broadview Heights,* 712 F.3d 951 (6th Cir. 2013) in which the court denied summary judgment on an assault and battery claim after finding the officers were not entitled to qualified immunity. *Id.* at 963. However, there is no evidence that DuPont's acts were done with malicious purpose, bad faith, or in a wanton or reckless manner. And unlike the officers in *Martin,* DuPont *is* entitled to qualified immunity. The motion for summary judgment on Wiggins's claim for assault and battery against DuPont will be granted.

### C. Count Three – Willful, Wanton, Reckless Malicious

Defendants argue that Wiggins has failed to state a claim against them in Count Three. They submit that there is no claim for willful, wanton, reckless and malicious behavior. Wiggins has not argued otherwise. His brief in opposition defends the assault and battery claim in Count Two and the intentional infliction of emotional distress claim in Count Five. But he has not

17

argued that he stated a separate claim in Count Three. This claim is simply an element of his Count Two claim. *See Bradley v. City of Cleveland,* No. 1:11CV781, 2012 U.S. Dist. LEXIS 30714, 2012 WL 775106, at *3 (N.D. Ohio Mar. 7, 2012). Reckless, wanton, or willful conduct, are elements of intent which may negate defenses like statutory immunity. *Bradley,* 2012 U.S. Dist. LEXIS 30714, 2012 WL 775106, at *3. Defendant's unopposed argument is well taken. The motion for summary judgment on Count Three must be granted.

### D. Count Five – Intentional Infliction of Emotional Distress

Officers Tatulinski and DuPont argue that there is no evidence supporting the necessary elements of Wiggins's claim for intentional infliction of emotional distress ("IIED"). The court agrees. To prove a claim for IIED, Wiggins must show:

1) defendants intended to cause emotional distress or knew or should have known that his conduct would result in serious emotional distress to the plaintiff;

2) defendants' conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

3) defendants' conduct was the proximate cause of plaintiff's psychic injury; and,

4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Kovac v. Superior Dairy, Inc.,* 930 F.Supp.2d 857, 870 (N.D. Ohio 2013), citing *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir. 2008). Wiggins has not proffered evidence supporting these elements. Officer DuPont's conduct was not objectively unreasonable given the circumstances. Consequently, Wiggins cannot show that the officers' conduct was extreme or outrageous. And, Wiggins has submitted no evidence that he suffered serious

18

emotional distress. He admits he did not seek any psychological treatment for a severe emotional condition. ECF Doc. 19-1, page 35.

Wiggins' only argument against summary judgment on his IIED claim is that there are genuine issues of material fact on his excessive force claim. He has not pointed to any evidence showing that the elements of his IIED claim are genuinely disputed as required by Fed. R. Civ. Proc. 56(c). The motion for summary judgment on Count Five must be granted.

## V. Conclusion

Officers DuPont and Tatulinski are entitled to qualified immunity on Wiggins's Count One excessive force claim. Ohio Rev. Code § § 2744.03(A)(6) provides statutory immunity on Wiggins's Count Two assault and battery claim. Wiggins has failed to state a claim in Count Three of his complaint, and he has failed to adduce evidence to support all of the elements of his Count Five claim that he suffered intentional infliction of emotional distress. Officers DuPont and Tatulinski are entitled to summary judgment as a matter of law on all claims asserted against them, and their motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: May 24, 2018

Thomas M. Parker
United States Magistrate Judge